## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Miiah McCray,<br><br>    Plaintiff,<br><br>v.<br><br>MIDWEST BONDING, LLC and<br>Midwest Resale Specialist INC.,<br><br>    Defendants. | Court File No.: 26-CV-01887 (PJS-DTS)<br><br><br>**Amended Complaint**<br><br><br>**Jury Trial Demanded** |

## PARTIES

1.    Plaintiff Miiah McCray is an individual who lives in Minneapolis, Minnesota and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

2.    Defendant MIDWEST BONDING, LLC is a bail bond agency and creditor organized in the state of Minnesota with a registered office address of 525 Junction Street, PO Box 125, Winona, Minnesota, 55987.

3.    Defendant Midwest Resale Specialist INC. is a debt collection agency organized in the state of Minnesota with a registered office address of 412 South Fourth Street, Suite 1150E, Minneapolis, Minnesota, 55415.

4.    According to its website, MRS provides trusted collection services for healthcare, finance, retail, property management, and more.

5.    MRS is licensed by the Minnesota Department of Commerce to collect debts.

1

6.    Because MRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to others, it is a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6).

## JURISDICTION & STANDING

7.    Jurisdiction arises under 28 U.S.C. § 1331 and under 15 U.S.C. § 1692k(d).

8.    Venue is proper in this district because the defendants reside here and a substantial part of the events giving rise to the claim occurred here.

9.    McCray has Article III standing because she has suffered concrete, tangible and particularized injuries directly caused by the defendants' violations, including tangible monetary and emotional harm.

## FACTUAL ALLEGATIONS

10.    McCray incurred a financial obligation to Midwest Bonding by entering into a promissory note to acquire a bail bond.

11.    This transaction between McCray and Midwest Bonding was for personal, family, or household purposes because it was intended to secure the release of McCray's son from custody.

12.    The transaction was not for business or commercial purposes.

13.    The financial obligation to Midwest Bonding is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

14.    Midwest Bonding filed a conciliation court action against McCray in Hennepin County on December 4, 2024.

15. In its complaint, Midwest Bonding alleged that McCray owed $3,870 for failure to make payments on the promissory note.

16. McCray did not attend the conciliation court hearing because her son told her he would take care of paying Midwest Bonding.

17. Midwest Bonding obtained a default judgment against McCray in the amount of $3,870 on May 8, 2025.

18. Midwest Bonding transcribed the conciliation court judgment to Hennepin County District Court on July 15, 2025.

19. Midwest Bonding used MRS to attempt to collect the judgment from McCray.

20. On August 22, 2025, MRS served simultaneous garnishment summonses on McCray's bank accounts at Huntington Bank and Affinity Plus Credit Union on behalf of Midwest Bonding.

21. The garnishment summonses to Huntington Bank and Affinity Plus Credit Union were signed by MRS's owner, Aaron Hanson.

22. Hanson is not an attorney.

23. On or around August 28, 2025, Huntington Bank froze $4,345 in McCray's account.

24. Huntington Bank deducted a $75 fee from McCray's account for processing the garnishment.

25. This frozen amount was the maximum 110% allowed under Minnesota Statutes section 571.72, and effectively secured payment in full of the entire outstanding judgment balance of $3,870.

26. In addition, on or around August 28, 2025, Affinity Plus Credit Union froze $297.23 in McCray's account.

27. Upon information and belief, Huntington Bank and Affinity Plus Federal Credit Union notified MRS and Midwest Bonding the amount of McCray's funds each respective institution had frozen.

28. On August 29, 2025, MRS requested a Writ of Execution from Hennepin County District Court on behalf of Midwest Bonding.

29. The Court issued a writ of execution on September 5, 2025.

30. On September 6, 2025 a wage garnishment summons was served on McCray's employer, Target, listing an unpaid balance of $3,935.

31. Upon information and belief, the wage garnishment summons was prepared and served by MRS and signed by Hanson, acting on behalf of Midwest Bonding.

32. Before serving the wage garnishment summons, the defendants failed to serve the mandatory Notice of Intent to Garnish Wages required by Minnesota Statutes section 571.924.

33. By bypassing this statutory notice prerequisite, the defendants unlawfully deprived McCray of her right to claim exemptions or address the debt before her wages were seized.

4

34.     On September 12, 2025, Target seized $715.76 from McCray's paycheck.

35.     Upon information and belief, Target notified MRS and Midwest Bonding of the amount of money it withheld from McCray's paycheck.

36.     Following the Target garnishment, the defendants had caused a cumulative seizure of $5,357.99 for a $3,870 judgment.

37.     On or around September 5, 2025, McCray filed a conciliation court case against MRS and Hanson for $5,500, on the basis that they garnished funds for a debt they were not legally authorized to collect on.

38.     The conciliation court case was dismissed without prejudice on the grounds that the conciliation court did not have jurisdiction over the matter.

39.     On February 20, 2026, McCray emailed Hanson directly to demand the immediate refund of the funds that were seized in excess of the judgment amount.

40.     Instead of returning the funds that MRS and Hanson's simultaneous garnishments had illegally seized, Hanson refused her demand. In his response, Hanson claimed that MRS "did not receive any funds from you, your employer, or any financial institution" and had "no record of receiving or disbursing the amounts."

41.     Furthermore, Hanson unlawfully attempted to shift the burden of the over-garnishment to McCray, telling her that her account was "returned to the original creditor" and advising her to "contact the original creditor or the court directly" to track down her money.

42.     On February 25, 2026, after McCray reached out to Midwest Bonding, as directed, Hanson emailed McCray again, "Ok will notify, Midwest Bonding to request the funds and file the satisfaction of judgement."

43.     Hanson's email constitutes a clear admission that MRS and Hanson still had not facilitated the return of the illegally-seized overage, while also demonstrating bad faith by attempting to deflect responsibility.

44.     Despite knowing that they had frozen nearly $1,500 more than they were entitled to, the defendants have refused to release excess funds for more than six months.

45.     As a direct result of the defendants' actions, McCray felt the most stress she has ever felt in her life worrying about how she would make ends meet to support herself and her family.

46.     McCray's emotional distress manifested in physical symptoms such as panic attacks, anxiety, nausea and many sleepless nights.

47.     In addition, McCray suffered monetary loss, in the form of a garnishment fee charged by her bank, as a result of the defendants' illegal actions.

## JURY TRIAL

48.     McCray requests a jury trial. FED. R. CIV. P. 38.

## CAUSES OF ACTION

### Count I – Fair Debt Collection Practices Act (MRS only)

*FDCPA Violation One: Unauthorized Practice of Law*

49.     Only licensed attorneys may represent clients in judicial proceedings, including garnishment proceedings.

50.     By impermissibly representing Midwest Bonding and signing court documents to initiate garnishments against McCray, MRS took an action that could not legally be taken, violating 15 U.S.C. § 1692e(5).

*FDCPA Violation Two: Unfair and Unconscionable Over-Garnishment*

51.     Minnesota law explicitly limits the maximum amount a creditor or debt collector may freeze through a garnishment summons to 110% of the creditor's unpaid claim.

52.     The total unpaid judgment entered against McCray was $3,870. Therefore, MRS and Hanson were legally prohibited from freezing any amount over $4,257.

53.     Despite this statutory cap, MRS and Hanson deliberately executed simultaneous garnishments against McCray's financial institutions and her employer without implementing any safeguards to prevent illegal over-collection.

54.     Specifically, MRS and Hanson's simultaneous garnishment summonses caused Huntington Bank to freeze $4,345, caused Affinity Plus Credit Union to freeze $297.23, and caused Target Corporation to seize $715.76 from McCray's wages.

7

55.    The unconscionability of these collection methods was compounded by their deliberate bypass of mandatory procedural safeguards, specifically the 10-day wage notice.

56.    In total, MRS and Hanson caused a cumulative freeze and seizure of $5,357.99 to satisfy a $3,870 judgment. This gross over-collection amounted to approximately 138% of the underlying debt, far exceeding the 110% maximum limit permitted by state law.

57.    By exploiting a state judicial mechanism in a legally unauthorized, abusive, and oppressive manner to secure funds far in excess of what they were legally permitted to freeze or collect, MRS and Hanson used unfair and unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

*FDCPA Violation Three: False Representation of the Amount Owed*

58.    On August 28, 2025, MRS and Hanson froze $4,345 in McCray's Huntington Bank account.

59.    This frozen amount fully secured and exceeded the entire underlying $3,870 judgment against McCray.

60.    Despite already having the entire judgment amount secured by the frozen bank funds, MRS and Hanson proceeded to serve a wage garnishment order on McCray's employer, Target Corporation, on or about September 6, 2025.

61.     In the wage garnishment communication sent to Target Corporation, MRS and Hanson explicitly represented that an "Amount Owed" of $3,935 remained outstanding.

62.     This representation to McCray's employer was false, as the debt was already completely secured by the funds frozen at Huntington Bank just days prior.

63.     By representing to McCray's employer that the judgment remained unpaid when it was already fully secured in a frozen bank account, MRS and Hanson falsely represented the character, amount, or legal status of a debt in violation of 15 U.S.C. § 1692e(2)(A).

### *FDCPA Violation Four: Unfair Retention of Overage Funds*

64.     After Affinity Plus Credit Union returned its frozen portion to McCray, the cumulative amount frozen and seized by MRS and Hanson's simultaneous garnishments remained at $5,060.76, creating an illegal overage of $1,190.76 beyond the $3,870 judgment.

65.     For more than six months after the judgment was fully secured, MRS and Hanson have retained, or caused the retention of, these over-collected funds without releasing the excess bank freeze, returning the stolen wages, or filing a Satisfaction of Judgment with the Court.

66.     By continuing to hold or freeze the amount of McCray's funds in excess of the judgment balance for months after the debt was fully satisfied, and by refusing to refund the overage while acting in bad faith to deflect responsibility,

MRS and Hanson used unfair and unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

### Count II – Wrongful Garnishment under Minn. Stat. § 571.90 (Midwest Bonding Only)

67.    Midwest Bonding, acting through its agents MRS and Hanson, violated Minn. Stat. § 571.90 by freezing McCray's money in excess of the amount allowed by section 571.72, by failing to provide McCray with the 10-day notice required by section 571.924, and by failing to satisfy the judgment within 10 days of the debt being paid in full through garnishment under section 548.15.

68.    These violations of Minnesota garnishment procedure were made in bad faith.

### PRAYER FOR RELIEF

McCray requests that judgment be entered against the defendants:

### Count I – Fair Debt Collection Practices Act (MRS only)

69.    For actual damages under 15 U.S.C. § 1692k(a)(1);

70.    For statutory damages of $1,000 under 15 U.S.C. §1692k(a)(2)(A);

71.    For the costs of litigation and reasonable attorney's fees under 15 U.S.C. § 1692k(a)(3); and

72.    For further relief as this court finds just and equitable.

### Count II – Wrongful Garnishment under Minn. Stat. § 571.90 (Midwest Bonding Only)

73.    For the garnishment to be rendered void under Minn. Stat. §571.90;

74.    For statutory damages of $100 under Minn. Stat. §571.90;

10

75.    For actual damages under Minn. Stat. §571.90;

76.    For reasonable attorney's fees and costs under Minn. Stat. §571.90;

77.    For further relief as this court finds just and equitable.

Date: April 15, 2026

s/ Todd Murray

Todd Murray (#347462)
**Friedman Murray, PLLC**
1400 Van Buren St NE, Suite 200
Minneapolis, MN 55413
todd@friedmanmurray.com
(612) 564-4025 (phone)

David Friedman (#390796)
**Law Office of David Friedman,
PLLC**
4 Westchester Park Drive, Suite 155
White Plains, NY 10604
david@davidfriedmanlaw.com
(914) 222-3612 (phone)